# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

ERIC WHITE,

    Plaintiff,

    v.                                                  5:22-CV-73

CHAMPION HOME BUILDERS,
INC.,

    Defendant.

## ORDER

    This case arises out of an employment dispute between Plaintiff Eric White and his former employer, Defendant Champion Home Builders, Inc. Before the Court is Defendant's motion for summary judgment. Dkt. No. 24. The matter has been fully briefed and is ripe for review. See Dkt. Nos. 24, 31, 32, 33. For the reasons set forth herein, Defendant's motion is **GRANTED**.

## BACKGROUND

    Before discussing the factual background of this case, the Court addresses Defendant's argument that the facts contained in its statement of undisputed material facts "should be deemed admitted" because Plaintiff failed to address those facts in his response. Dkt. No. 32 at 1.

I.   **Defendant's material facts are admitted because Plaintiff failed to respond.**

With its motion for summary judgment and brief in support, the movant must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute." S.D. Ga. L.R. 56.1. The facts set forth in that statement "will be deemed to be admitted unless controverted by a statement served by the opposing party." Id.; see also Thomas v. Elixir Extrusion LLC, No. 5:18-cv-11, 2019 WL 2664987, at *1 (S.D. Ga. June 27, 2019) ("Because Plaintiff has not responded, pursuant to Local Rule 56.1, the facts as stated in Defendants' [statement of material facts] are deemed admitted for the purpose of considering Defendants' [motion for summary judgment]." (citing S.D. Ga. L.R. 56.1)). Put simply, if a plaintiff does not directly dispute the facts set forth in a defendant's statement of material facts, the Court deems those facts admitted.

Plaintiff's status as a *pro se* litigant does not alleviate his burden to respond to Defendant's statement of material facts. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (A *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); Thomas, 2019 WL 2664897, at *1 (deeming a defendant's statement of material facts admitted where a *pro se* plaintiff failed to respond). On the other hand, "[p]ro se pleadings are held to a less stringent standard

than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1988); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972))). But even when liberally construing a *pro se* plaintiff's response to a motion for summary judgment, "the Court does not have an obligation to parse a summary judgment record to search out facts or evidence not brought to its attention." Foxworth v. Greystone Alliance, LLC, No. 1:11-cv-4299, 2012 WL 13129656, at *1 (N.D. Ga. Nov. 20, 2012) (citing Atl. Gas Light Co. v. UGI Utilities, Inc., 463 F.3d 1201, 1209 n.11 (11th Cir. 2006)), report and recommendation adopted, ECF 31 (Dec. 11, 2012); see also GJR Invs. V. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th. Cir. 1998) (The leniency afforded to *pro se* litigants "does not give a court license to serve as de facto counsel for a party." (citations omitted)). As explained below, Plaintiff failed to directly dispute most of the facts contained in Defendant's statement of material facts. Therefore, the Court deems those undisputed facts admitted.

Plaintiff's response to Defendant's motion for summary judgment does not directly respond to Defendant's statement of

material facts.[1] See generally Dkt. No. 31. Instead, his response centers upon refuting affidavits of Defendant's employees. See id. at 9-10. Specifically, Plaintiff contends he has recordings of one of Defendant's witnesses, Crystal Morton, stating she "was forced to sign something" with "no clue of what it was." Id. at 1. And Plaintiff argues another witness, Malika Hill, was "tricked" into signing her affidavit, and Plaintiff provides a Facebook message as proof.[2] Id. at 12. Although Plaintiff did not frame these two arguments as a response to Defendant's statement of material facts, given the liberal construction due to *pro se* plaintiffs' pleadings, the Court construes these arguments as objecting to Defendant's factual assertions regarding the content of the affidavits. Dkt. No. 24-4 ¶¶ 23-24; see also Dkt. No. 24-2 at 10-13 (affidavits of the four employees). Thus, Defendant's statements of material fact which rely on the employees' affidavits are not deemed to be admitted by Plaintiff.

---

[1] Plaintiff's response is only three pages of handwritten text. It contains no legal argument besides stating that Title VII gives employees the ability to sue their employers for retaliation.

[2] In addition to the evidence listed above, Plaintiff submitted five images, allegedly showing safety issues about which Plaintiff complained to his superiors. Id. at 4-8. Those images are not relevant to any factual dispute, as Defendant accepts that Plaintiff complained to his superiors about safety issues. See Dkt. No. 24-4 ¶ 8 ("During his employment with [Defendant], [Plaintiff] made a lot of complaints about the work area." (internal quotations omitted)).

The factual background that follows is based on Defendant's statement of material facts, and the Court has ensured each fact is supported by sufficient record evidence. See Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) ("[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." (quotations omitted)); United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) ("The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted[] but must ensure that the motion itself is supported by evidentiary materials." (citations omitted)).

## II.  Factual Background

Defendant Champion Home Builders, Inc., produces manufactured homes at a plant in Waycross, Georgia. Dkt. No. 24-2 ¶ 2. Plaintiff Eric White, a black male, began working for Defendant on May 4, 2020. Dkt. No. 24-1 at 8; Dkt. No. 24-2 ¶ 4. While employed by Defendant, Plaintiff worked as a "top finisher" in the "mud tunnel," where he assisted in finishing roofs for manufactured homes. Dkt. No. 24-1 at 9. At all relevant times, Gary Newberry was Plaintiff's direct superior. Id. At some point during his employment, Plaintiff "made a couple of complaints about discrimination" and "a lot of complaints about the work area" to

5

Newberry and Plant Manager Ron Burkett.[3] Id. at 10. Plaintiff testified that, in response to his complaints, Newberry stated either "if you had your motherfucking ass working, it wouldn't be a problem" or "if [you] had [your] black ass working, it wouldn't matter." Dkt. No. 24-4 ¶¶ 12-13. In Plaintiff's opinion, Newberry made those comments because Plaintiff kept going "over [Newberry's] head" by complaining to management. Id. ¶ 15.

In May 2022, "due to time constraints and need for additional help," Defendant asked its employees to work outside of their assigned department and assist in manufacturing Federal Emergency Management Agency (FEMA) homes. Id. ¶ 16. As a result, on May 24, 2022, Newberry told Plaintiff to help with the FEMA homes after he had completed his work with the mud tunnel. Id. ¶ 17. In response, Plaintiff complained to Newberry, Plant Manager Burkett, and Operations Manager Wayne Gilmore about being asked to work in another department with which he was not familiar. Id. ¶¶ 18-19. But ultimately, Plaintiff was sent to paint one of the FEMA homes, where he painted "for about [thirty] minutes." Id. ¶ 19. The next day, Operations Manager Gilmore learned that Plaintiff spilled "excessive[]" paint on the floors of the FEMA home and "did not

---

[3] Specifically, Plaintiff complained about: "how the workers were setting roofs on the manufactured homes;" "the drain system in the middle of the mud tunnel . . . overflow[ing] with water," making it "dangerous to walk across;" and "cables in the mud tunnel that posed a safety issue because [the mud room employees] had to look up while working on the ceiling." Dkt. No. 24-4 ¶¶ 9-11.

clean up the paint spills." Id. ¶ 21. Plaintiff acknowledges that he got paint on the floor of the FEMA home. Id. ¶ 28. After an investigation,[4] Defendant terminated Plaintiff's employment "for willful destruction of company property." Id. ¶ 26.

## III. Procedural History

Following his termination, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) on August 25, 2022. Dkt. No. 24-1 at 133–34. On September 16, 2022, the EEOC issued Plaintiff a "Notice of Right to Sue." Dkt. No. 1 ¶ 10. Thereafter, on December 14, 2022, Plaintiff initiated this suit against Defendant, claiming race discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. See generally id. Defendant answered the complaint, dkt. no. 7, and discovery commenced. Throughout the initial stages of this suit—e.g., filing the complaint and the early stages of discovery—Plaintiff was represented by counsel. But on July 12, 2023, Plaintiff's counsel withdrew from representation, and Plaintiff proceeded *pro se*. Dkt. No. 17.

---

[4] As a part of that investigation, Defendant claims Gilmore interviewed other Champion employees, Crystal Morton, Malika Hill, Brendan Lewis, and Garrett Wilson, who were allegedly present while Plaintiff was spilling paint. Dkt. No. 24-4 ¶ 23. Defendant also claims those employees voluntarily signed affidavits stating they saw Plaintiff spill paint. Id. ¶ 24. As previously discussed, Plaintiff effectively objects to these claims.

After completion of discovery, Defendant filed the present motion for summary judgment, dkt. no. 24, along with a statement of material facts, dkt. no. 24-4. Plaintiff, still proceeding *pro se*, filed a response to Defendant's motion for summary judgment, but he did not address Defendant's statement of material facts. See generally Dkt. No. 31. At some point after the parties had completed briefing on the motion, Plaintiff filed a "motion to keep my case going and motion for extension of time." Dkt. No. 34. Therein, Plaintiff asked the Court to allow him extra time to file additional evidence in support of his opposition to Defendant's motion for summary judgment. Id. Plaintiff claimed he had recordings that would substantiate his claims and recordings showing other Champion employees were forced to sign the previously mentioned affidavits. Id. Construing the motion under Federal Rule of Civil Procedure 56(d), the Magistrate Judge granted Plaintiff's motion and allowed him additional time to file those recordings with the Court. Dkt. No. 36 at 1. Plaintiff later submitted two audio recordings that are discussed herein. Dkt. No. 37.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party."

8

FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

## DISCUSSION

Defendant seeks summary judgment on all Plaintiff's claims: race discrimination under Title VII, race discrimination under § 1981, retaliation under Title VII, and retaliation under § 1981. See generally Dkt. No. 24-3. The Court first addresses race discrimination under both Title VII and § 1981.

## I.   Racial Discrimination

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contract, including employment contracts." Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999); see also 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."). "Title VII prohibits an employer from firing an employee because of race or otherwise racially discriminating against an individual with respect to the terms of her employment." Reeves v. Columbus Consol. Gov't, No. 23-11463, 2024 WL 33903, at *1 (11th Cir. Jan. 3, 2024) (citing 42 U.S.C. § 2000e-2(a)). The same analysis is used to evaluate racial discrimination claims under both Title VII and § 1981. See Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race

discrimination under § 1981 are [] the same as a Title VII disparate treatment claim in the employment context." (citations omitted)). Thus, the Court addresses both of Plaintiffs' racial discrimination claims together.

"Plaintiff[] bear[s] the burden of proving that [Defendant] discriminated against [him] unlawfully." Hinson v. Clinch Cnty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (citations omitted); see also Lewis v. City of Union City, 918 F.3d 1213, 1220 (11th Cir. 2019) ("In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in her favor."). And he may do so by submitting either direct evidence or circumstantial evidence. Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022). Defendant summarily states that "Plaintiff presents no . . . direct evidence of discrimination." Dkt. No. 24-3 at 4. And Plaintiff does not directly respond to this statement. See generally Dkt. No. 31. Still, because Plaintiff is *pro se*, the Court has reviewed the record evidence and finds there is no direct evidence of discrimination.

Without any direct evidence of discrimination, Plaintiff must rely on circumstantial evidence to meet his burden. Jenkins, 26 F.4th at 1249. Plaintiff may meet his burden by providing circumstantial evidence that satisfies the McDonnell Douglas burden-shifting framework or by presenting a "convincing mosaic of

circumstantial evidence that warrants an inference of intentional discrimination." Lewis, 918 F.3d at 1220 n.6; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court will begin its analysis with the McDonnell Douglas framework.

**A. Plaintiff has not satisfied his burden under McDonnell Douglas.**

Under McDonnell Douglas, Plaintiff "bears the initial burden of establishing a prima facie case of discrimination." Lewis, 918 F.3d at 1220. To do this, Plaintiff must show: (1) that he belongs to a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified to perform the job in question, and (4) that his employer treated "similarly situated" employees outside his class more favorably. Id. at 1220–21 (citations omitted). Plaintiff has satisfied the first three prongs: he is black; he was fired; and he is qualified for his job. See, e.g., Lewis, 918 F.3d at 1223 ("Every qualified minority employee who gets fired . . . necessarily satisfies the first three prongs of the traditional prima facie case."). Indeed, Defendant concedes the first three requirements are satisfied. See Dkt. No. 24-3 at 4. Thus, the Court is faced with determining only whether the fourth prong is satisfied.

The Eleventh Circuit's law regarding the fourth prong is clear: "To prove that an employer treated a similarly situated individual outside the employee's protected class more favorably,

the employee must show that he and his proffered comparator were similarly situated in 'all material respects.'"[5] <u>Anthony v. Georgia</u>, 69 F.4th 796, 805 (quoting <u>Lewis</u>, 918 F.3d at 1224). Plaintiff has not satisfied this burden. Based upon the record, Plaintiff presents no evidence of a comparator at all. The only mention of a potential comparator is in Plaintiff's complaint and in his response to Defendant's motion for summary judgment. Plaintiff's complaint states: "[O]ther employees who did drip paint on the floor . . . were treated more favorably than [Plaintiff], i.e., they were not terminated." Dkt. No. 1 ¶ 19. And in his response brief, Plaintiff states that he did not spill all the paint because there were about "[eight] or [nine] other people on the trailer." Dkt. No. 31 at 2. Neither of these statements provide evidence of an actual comparator for the Court's analysis.

Even if the Court assumed, *arguendo*, that the other individuals painting with Plaintiff spilled paint on the floor, they would not be sufficient comparators because they are not similarly situated in "all material respects." <u>Lewis</u>, 918 F.3d at 1224. For example, Plaintiff admits he was the only mud room

---

[5] "Generally, a 'similarly situated' comparator is an employee who 'engaged in the same basic conduct (or misconduct) as the plaintiff,' was 'subject to the same employment policy, guideline, or rule,' had the 'same supervisor as the plaintiff,' and 'share[d] the plaintiff's employment or disciplinary history.'" <u>Anthony v. Georgia</u>, 69 F.4th 796, 805 (11th Cir. 2023) (quoting <u>Lewis</u>, 918 F.3d at 1227–28).

employee painting that day. See Dkt. No. 31 at 2 ("I was the only one forced to work in a [different] department."). The other employees painting alongside Plaintiff were employed in a department other than the mud room and, presumably, have a different supervisor. See Anthony, 69 F.4th at 805 ("[A] similarly situated comparator is an employee who . . . has the same supervisor as the plaintiff." (quotations omitted)). Still, the fact that the Court is forced to assume characteristics of a potential comparator elucidates the problem with Plaintiff's failure to provide a specific comparator. At bottom, Plaintiff fails to provide a *sufficient* comparator because he fails to provide any comparator at all.

But even if Plaintiff had provided a sufficient comparator, his racial discrimination claim would fail under the rest of the McDonnell Douglas burden-shifting analysis. "If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis, 918 F.3d at 1221 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Burdine, 450 U.S. at 255 (footnotes omitted). Defendant has met that burden here. Defendant asserts Plaintiff was terminated for spilling paint on the floor of the

14

manufactured home, which constitutes "willful destruction of company property" in violation of Defendant's employee handbook. Dkt. No. 24-4 ¶ 26. In doing so, Defendant relies on the affidavit of Wayne Gilmore, who ultimately fired Plaintiff.[6] See id. ¶ 9. Willful destruction of company property, especially when it violates company policy, is a legitimate, nondiscriminatory reason for termination. See, e.g., Xingzhong Shi v. Montgomery, 679 F. App'x 828, 832 (11th Cir. 2017) ("An employee's violation of a company's work rules may constitute a legitimate, non-discriminatory reason for termination." (citations omitted)), cert. denied, 583 U.S. 823 (2017). Indeed, Plaintiff admits that he spilled paint on the floor. Dkt. No. 24-1 at 22-23. More importantly, Plaintiff does not dispute Defendant's assertion that this was a legitimate, nondiscriminatory reason for Plaintiff's termination in any of his filings with the Court. Thus, Defendant has met its burden.

The burden then shifts back to Plaintiff, and he must "demonstrate that [] [D]efendant's proffered reason was merely a pretext for unlawful discrimination." Lewis, 918 F.3d at 1221. Put another way, Plaintiff has the "opportunity to demonstrate that the proffered reason was not the true reason for" his termination. Burdine, 450 U.S. at 256. He may do this "either directly by

---

[6] Notably, this was a fact included in Defendant's statement of material facts that Plaintiff did not dispute.

persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (citing McDonnel Douglas, 411 U.S. at 804-05); see also Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) ("The burden of proving pretext merges with the plaintiff's ultimate burden of [persuasion], and it can be met by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation."). Plaintiff has not met his burden directly or indirectly.

First, Plaintiff has offered no evidence to support a finding that his race more likely than not motivated Defendant's decision to terminate him. See Burdine, 450 U.S. at 256. While Plaintiff advances some evidence of supervisor Newberry's potentially demeaning, race-related comments, see, e.g., dkt. no. 24-4 ¶¶ 12-13 (referencing Plaintiff's deposition testimony about Newberry calling another black employee his mother and telling Plaintiff to get his "black ass to work"), those comments do not support a finding that race was the cause of his termination. Indeed, Plaintiff testified that he believes Newberry made those comments because Plaintiff kept going "over [Newberry's] head" to complain about safety issues. Id. ¶ 15. Plaintiff also submits a video recording of a conversation allegedly between Plaintiff and

Newberry.[7] During that conversation, Plaintiff asks to use vacation time, and Newberry responds, "[y]ou . . . ain't getting no damn vacation day." Dkt. No. 37, VID-20220519-100224302 at 0:00:22-0:00:25. This comment does not support any finding that Plaintiff's termination was racially motivated.

Second, Plaintiff has provided no evidence "discrediting [Defendant's] proffered explanation" for his termination. Clark, 990 F.2d at 1228. As previously mentioned, Defendant provides affidavits of four employees stating they saw Plaintiff spill paint on the manufactured home's floor and fail to clean it up. See Dkt. No. 24-2 at 10-13 (affidavits of Crystal Morton, Malika Hill, Brendan Lewis, and Garrett Wilson). Plaintiff claims those employees were either forced or tricked into signing the affidavits. Dkt. No. 31 at 2, 12. In support of that contention, he submits a video recording of his conversation with Crystal Morton, where she states another employee, "Troy," forced them to sign the affidavits.[8] Plaintiff also submits a Facebook message from an unidentified individual that states the employees were told the affidavits just "stat[ed] that they didn't mess anything up in the house." Id. at 12. Even assuming these two pieces of

---

[7] The video, which was seemingly recorded on Plaintiff's phone while in his pocket, mostly features a black screen and muffled audio. The Court cannot verify the speakers in the video.

[8] Again, the video recording features a mostly black screen and muffled audio. Besides Plaintiff's allegations, the Court cannot say for sure who is speaking in the video.

evidence are authentic and support Plaintiff's contention that Defendant forced/tricked the employees to sign the affidavits, Plaintiff still fails to prove pretext. Plaintiff himself admits that he spilled paint on the floor. Dkt. No. 24-1 at 22-23. Therefore, any argument against the factual contents of these affidavits is unavailing. In the event Plaintiff is arguing Defendant and its employees conspired to cover up Plaintiff's termination being race-based, that argument also fails. Merely proving that Defendant lied about the affidavits is not enough to prove pretext. See, e.g., Flowers v. Troup Cnty., 803 F.3d 1327, 1338-39 (11th Cir. 2015) (granting defendant summary judgment as to employee's race discrimination claim because even if school district's explanation was a lie, employee failed to put forth any additional evidence that would support an inference of unlawful discrimination); Howard v. U.S. Steel Corp., No. 2:11-cv-1010, 2014 WL 1042968, at *22 (N.D. Ala. Mar. 14, 2014) ("A plaintiff does not show pretext by discrediting minor details of the employer's explanation that do not reasonably call into question its proffered motive for an employment decision." (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1534-35 (11th Cir. 1997))). Plaintiff must meet his "burden of persuasion" to prove his termination was racially motivated. Burdine, 450 U.S. at 256 ("This burden now merges with the ultimate burden of persuading the court

that [Plaintiff] has been the victim of intentional discrimination."). He has not done that here.

Plaintiff has not satisfied his burden under <u>McDonnell Douglas</u>. He has not satisfied the fourth prong of establishing a prima facie case of intentional discrimination because he has failed to provide a sufficient comparator. But even if he had met that initial burden, he has not met his burden to persuade the Court that Defendant's legitimate, nondiscriminatory reason for his termination was pretextual. However, Plaintiff's failure to meet his burden under <u>McDonnel Douglas</u> "does not necessarily doom [his] case." <u>Smith v. Lockheed-Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011). The Court now turns to whether Plaintiff has presented a "convincing mosaic" of circumstantial evidence that allows an inference of intentional discrimination.

**B. Plaintiff has not presented a "convincing mosaic" of circumstantial evidence supporting an inference of racial discrimination.**

Put plainly, a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." <u>Id.</u> (collecting cases). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." <u>Id.</u> "A plaintiff may establish a convincing mosaic by pointing to

evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." Jenkins, 26 F.4th at 1250 (internal quotations omitted). None of these factors support Plaintiff's case. The second and third factors have both been previously discussed. No evidence, direct or circumstantial, indicates "systematically better treatment of similarly situated employees." Id. Even if the other employees painting with Plaintiff also spilled paint and were not reprimanded accordingly, that points to only one instance of better treatment— not "systematically better treatment." Id. As to the third factor, the Court has already determined that Plaintiff has failed to prove that Defendant's justification for his termination was pretextual. See supra pp. 16–19.

That leaves the first factor: whether there is circumstantial evidence that "demonstrates . . . suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred." Lewis, 934 F.3d at 1185. As an initial matter, Plaintiff does not specifically highlight any suspicious timing or ambiguous statements. See, e.g., Conaway v. Gwinnet Cnty., No. 1:16-cv-01418, 2019 WL 2611071, at *9 (N.D. Ga. June 25, 2019) ("Plaintiff does not point the Court to any suspicious timing or ambiguous statements."). But even upon review of the record, there

is not enough circumstantial evidence to support the first factor. For example, Newberry's racially motivated comments to Plaintiff do not promote an inference that Plaintiff was fired because of his race. See Dkt. No. 24-4 ¶ 13 (Newberry's "black ass" comment); Dkt. No. 24-1 at 13 (Newberry referring to another black employee as Plaintiff's mother). The Eleventh Circuit's recent decision of Campbell v. Wood Environment & Infrastructure Solutions, Inc., is particularly instructive here. No. 22-11472, 2023 WL 2929326 (11th Cir. Apr. 13, 2023). There, the plaintiff sued her employer for racial discrimination and asked the court to find she met her burden based on a "convincing mosaic" of circumstantial evidence. Id. at *3. Specifically, the plaintiff pointed to evidence of "three specific incidents" of racial discrimination "involving her former supervisor." Id. She argued that those incidents created an inference of racial discrimination when she was later fired. Id. But she admitted that "her former supervisor was not involved in the decision to terminate her employment." Id. (internal quotations omitted). The court found she had not presented a "convincing mosaic" because she "identified no evidence suggesting that her new supervisor acted with an intent to discriminate against her based on her race." Id. The same is true here. Newberry was Plaintiff's supervisor, but he did not make the decision to terminate Plaintiff. Wayne Gilmore did. Dkt. No. 24-4 ¶ 26. And Plaintiff has "identified no evidence suggesting that [Gilmore]

acted with an intent to discriminate against [him] based on h[is] race." Campbell, 2023 WL 2929326, at *3. Thus, the Court cannot infer that Gilmore terminated Plaintiff because he was black.[9]

Besides Newberry's comments, there is no other evidence that could support any inference of racial discrimination. The Court finds there is no "convincing mosaic" of circumstantial evidence from which it can infer Plaintiff was terminated based on his race. Too, he has not satisfied his burden under McDonnell Douglas. Therefore, Defendant's motion for summary judgment as to Plaintiff's racial discrimination claims under Title VII and § 1981 is **GRANTED.**

## II. Retaliation

"Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1257 (11th Cir. 2012) (citations omitted); see also CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008) ("§ 1981 encompasses claims of retaliation."). Analysis of retaliation claims is the same under Title VII and § 1981. See Gate Gourmet, 683 F.3d at 1258. "A plaintiff seeking to bring a retaliation claim under either statute must first establish a prima facie case by showing that (1) he engaged in a statutorily protected activity; (2) he suffered a

---

[9] Nor has Plaintiff presented evidence showing that Newberry somehow influenced Gilmore's decision to terminate Plaintiff.

materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." <u>Carson v. MARTA</u>, 572 F. App'x 964, 969 (11th Cir. 2014) (citing <u>Gate Gourmet</u>, 683 F.3d at 1258). The second requirement, that Plaintiff establish he suffered a materially adverse action, is not contested by the parties. Thus, the Court will consider the other two requirements.

As to whether Plaintiff engaged in a statutorily protected activity, Defendant summarily contends Plaintiff has not satisfied his burden. Dkt. No. 24-3 at 10–11. Nevertheless, Defendant concedes that "Plaintiff [] complained to [] management about alleged safety issues." <u>Id.</u> at 10. Plaintiff's testimony supports this, as he testified that he complained to Newberry and Plant Manager Burkett about multiple safety issues. <u>See</u> Dkt. No. 24-1 at 10–12. Additionally, Defendant concedes that, "in mid-2021," Plaintiff complained to Plant Manager Burkett about a racially derogatory comment Newberry had made to him. Dkt. No. 24-3 at 10; Dkt. No. 24-4 ¶ 38. Other than that, Plaintiff admits, prior to his termination, "he had never complained to anyone in management about racial harassment." Dkt. No. 24-4 ¶ 34. Based on the foregoing, the Court finds Plaintiff's mid-2021 complaint to Plant Manager Burkett was a statutorily protected activity. "To establish statutorily protected conduct under Title VII's opposition clause, [Plaintiff] must show[] that he had a good faith, reasonable belief that the employer was engaged in unlawful

23

employment practices." Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010) (internal quotations omitted); see also Carson, 572 F. App'x at 969 ("With regard to whether an employee has engaged in a statutorily protected activity, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by' Title VII." (quoting 42 U.S.C. § 2000e-3(a))). There is nothing in the record showing that Plaintiff did not have a good faith, reasonable belief that Defendant was engaging in unlawful race discrimination. And Defendant offers nothing to the contrary. Thus, Plaintiff has established the first requirement of a prima facie retaliation claim.

Plaintiff fails, however, to establish the third requirement of a prima facie case of retaliation—a causal connection between the protected activity and adverse action. "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (citations omitted). Plaintiff complained about Newberry's derogatory comment in mid-2021. Dkt. No. 24-4 ¶ 38. Plaintiff was terminated in May 2022. Id. ¶ 27. Even assuming the complaint was in August or September 2021, an eight-month delay between Plaintiff's complaint and his termination is not close enough to

24

warrant a finding of causation. <u>See</u> <u>Thomas</u>, 506 F.3d at 1364 (collecting cases) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). Plaintiff has provided no other evidence to support a finding of causation. Thus, he has failed to satisfy the third requirement in establishing a prima facie case of retaliation. Defendant's motion for summary judgment as to Plaintiff's retaliation claims under Title VII and § 1981 is **GRANTED.**

## III. Hostile Work Environment

Finally, Defendant asks the Court to grant summary judgment on Plaintiff's hostile-work-environment claim. As a preliminary matter, the Court finds Plaintiff has not clearly brought a hostile-work-environment claim. Defendant argues that "Plaintiff [] contends [] he was subjected to a hostile work environment based on his race." Dkt. No. 24-3 at 8. But Plaintiff's complaint shows otherwise. The complaint, which was filed with the assistance of counsel, does not mention a hostile-work-environment claim. <u>See</u> <u>generally</u> Dkt. No. 1. Instead, the complaint specifically alleges: "Defendant violated Title VII and Section 1981 by terminating Mr. White because of his race and in retaliation for Mr. White's complaints of race discrimination and racial harassment." <u>Id.</u> ¶ 23. And Plaintiff does not argue a hostile-work-environment claim in any of his briefing. <u>See generally</u> Dkt. Nos. 31, 33.

Moreover, Plaintiff's charge of discrimination filed with the EEOC does not mention any hostile-work-environment claim. See Dkt. No. 24-1 at 133–34. Thus, the Court finds Plaintiff has not advanced a valid claim for hostile work environment.

Even if Plaintiff had claimed he was subjected to a hostile work environment, that claim would fail at this stage. To present a prima facie case of a hostile work environment, Plaintiff must establish three things: "that [he] suffered unwelcome harassment, that it was based on a protected characteristic, and that it was sufficiently 'severe or pervasive' to alter the terms and conditions of [his] employment and create an abusive working environment." Harris v. Pub. Health Trust of Miami-Dade Cnty., 82 F.4th 1296, 1302 (11th Cir. 2023) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). Defendant does not contest the first two requirements. Dkt. No. 24-3 at 8–9. And the Court assumes, arguendo, those requirements are met. Still, Plaintiff has not established that any unwelcome harassment was sufficiently severe or pervasive. "The 'severe or pervasive' requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component." Harris, 82 F.4th at 1302 (citing Miller, 277 F.3d at 1276). The objective component is an especially high threshold because it is meant to "filter out complaints attacking the ordinary tribulations of the workplace, such as the

26

sporadic use of abusive language, gender-related jokes, and occasional teasing." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (internal quotations omitted). Thus, when evaluating the objective component, the Court considers: "(1) the frequency of the conduct, (2) its severity, (3) whether it was 'physically threatening or humiliating, or a mere offensive utterance,' and (4) whether it unreasonably interfered with the employee's job performance." <u>Harris</u>, 82 F.4th at 1302 (quoting <u>Miller</u>, 277 F.3d at 1276). These factors all weigh against finding any unwelcome harassment was objectively severe or pervasive.

Plaintiff has presented evidence showing that Newberry made a racially motivated comment only once. <u>See</u> Dkt. No. 24-4 ¶ 33 ("[Plaintiff] admits that Newberry only 'made that comment [about getting his black ass to work] one time.'" (quoting Dkt. No. 24-1 at 19)). This is not frequent enough to meet the "severe and pervasive" standard. <u>See, e.g.</u>, <u>McCann v. Tillman</u>, 526 F.3d 1370, 1373 (11th Cir. 2008) (finding one employee's racially motivated comments made over a two-year period did not amount to severe or pervasive harassment of the plaintiff). Additionally, the comments Newberry made referring to another black employee as Plaintiff's mother do not constitute severe and pervasive harassment. <u>See</u> Dkt. No. 24-4 ¶ 29 (citing Dkt. No. 1 ¶ 14). While those comments may be racially demeaning, Plaintiff has presented no evidence to show they were unduly severe, "physically threatening or humiliating,"

27

or "unreasonably interfered with [his] job performance." <u>Harris</u>, 82 F.4th at 1302 (internal quotations omitted). The Court finds any harassment alleged by Plaintiff was not severe or pervasive enough to establish a prima facie case of a hostile work environment. Thus, even if Plaintiff had brought a valid hostile-work-environment claim, the Court would find he has not met his burden in proving it. The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's hostile-work-environment claim.

### CONCLUSION

Defendant's motion for summary judgment is **GRANTED** in its entirety. Dkt. No. 24. The Clerk is **DIRECTED** to terminate all pending motions and close the case.

**SO ORDERED** this 18th day of January, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA